***********
The Full Commission has reviewed the prior Interlocutory Opinion and Award, and the subsequent Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Morgan S. Chapman, and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to receive additional evidence; rehear the parties or their representatives; or amend either Opinion and Award. Accordingly, the Full Commission affirms these Opinions and Awards of Deputy Commissioner Morgan S. Chapman.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission and the Industrial Commissions has jurisdiction of the parties and of the subject matter.
2. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
3. All parties have been correctly designated and there is no question as to misjoinder or nonjoinder of parties.
4. No parties appear in a representative capacity.
5. The employer-employee relationship as defined by N.C. Gen. Stat. § 97-2(2) existed between the parties on May 13, 1997.
6. The employer was insured by Warsaw Insurance Company on May 13, 1997.
7. Plaintiff was paid disability benefits in the total amount of $10,992.86 pursuant to an employer-funded plan.
8. Plaintiff's average weekly wage was sufficient to generate the maximum compensation rate.
9. The parties asked the Industrial Commission to bifurcate the issues in this case and asked that a ruling be entered in the first instance on whether or not the plaintiff sustained an injury by accident as a result of a specific traumatic incident of the work assigned on or about May 13, 1997.
10. The parties have stipulated into evidence the following documents:
 a. The depositions of Ronnie Lee, Deborah Lee and Dr. Ogden, which were submitted after the interlocutory hearing.
 b. The Pre-Trial Order dated November 28, 2000, which was submitted by the parties and is incorporated herein by reference.
 c. Five pages of medical records and reports from Dr. Haworth and Dr. Markworth;
 d. An additional five pages of medical records from Dr. Markworth and Dr. Hahn; and
e. Nineteen pages of medical records and reports from Dr. Markworth.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff, who is fifty-four years old and a high school graduate, began working for Federal Paper Board's predecessor in February 1967. During most of the first twenty years of his employment, plaintiff drove a forklift at the paper mill. However, he then became an assistant roll handling operator, which was the job he held at the time of the injury in question. The roll handling operator position required heavy lifting and was a rather strenuous job. Plaintiff also worked as a relief supervisor, meaning he would serve as an acting-supervisor during a supervisor's absence. As of May 1997, he had been a relief supervisor for approximately twenty years.
2. On May 13, 1997, plaintiff was working as a relief supervisor at the paper mill, having been called to fill in for a supervisor. At approximately 1:30 that afternoon, plaintiff had to take some documents to the mailroom located in the office upstairs. He climbed the first flight of steps to the landing and was turning to ascend the second flight of steps when he felt a stinging pain in his lower back. He paused a moment for the pain to subside but then continued working without reporting the incident. It was close to the end of his work shift, so plaintiff completed the shift paperwork and left to go home.
3. Plaintiff lived over thirty miles from the plant. By the time he got home, his back had become stiff to the point that he had difficulty getting out of his car. Plaintiff's wife was working in the yard when he drove up, and noticed that he sat in the car a couple of minutes after parking it. Plaintiff was able to slowly get out of the car and into his house, where he sat in his recliner during most of that evening.
4. On the next morning, May 14, 1997, plaintiff could not get out of bed due to back pain; he asked his wife to make a doctor's appointment for him. Mrs. Lee phoned Dr. Ogden's office and obtained an appointment for the plaintiff to be seen that morning.
5. Plaintiff was seen by Dr. Ogden that day. Unfortunately, Dr. Ogden did not get a history directly from the plaintiff because the doctor did not think it was important. Additionally, the staff had misunderstood what Mrs. Lee had told them about how plaintiff was hurt, so they recorded a note on his registration stating that plaintiff had injured his back while working in the yard. Dr. Ogden gave plaintiff an injection and referred him for physical therapy. When plaintiff left the doctor's office, he immediately went to see the physical therapist, who gave him pool therapy. The physical therapist noted a correct history.
6. Apparently, plaintiff informed the plant nurse on May 15, 1997, that he had hurt his back while climbing the steps to the office; however, he did not fill out an accident report until May 22, 1997.
7. Dr. Ogden saw plaintiff again on May 21, 1997. Since plaintiff was still in severe pain, the doctor referred him to Dr. Haworth, an ortopaedic surgeon from Duke Medical Center with an office in Lumberton. Dr. Haworth examined plaintiff on May 27, 1997. By this time, plaintiff was having pain radiating down his right leg. X-rays revealed some collapse of the disc spaces at L4-5 and L5-S1. An MRI was ordered, showing what appeared to be an old, small disc herniation at L5-S1 and an acute, large disc herniation at L4-5 that was impinging on the nerve root. Consequently, Dr. Haworth recommended surgery.
8. On July 1, 1997, plaintiff underwent surgery by Dr. Haworth to decompress the L4-5 interspace. Dr. Haworth's follow-up notes were not placed into evidence, but plaintiff apparently did not do well after the operation. In September he went to his family doctor for complaints of back, leg, and ankle pain. Although plaintiff then improved for a short time with treatment, his symptoms worsened and he was referred to Dr. Markworth, another ortopaedic surgeon. Dr. Markworth evaluated him on November 26, 1997. Plaintiff complained of persistent back and newly occurring bilateral leg pain. Apparently he had undergone a post-operative MRI, which did not reveal a recurrent disc herniation. Dr. Markworth diagnosed his condition as segmental instability and recommended a gentle reconditioning program in addition to his medications.
9. Dr. Markworth continued to recommend conservative treatment for as long as plaintiff could tolerate the symptoms, but the pain worsened. The doctor then sent plaintiff for a discogram, which was positive at multiple levels. After reviewing the test results, Dr. Markworth recommended that plaintiff undergo surgery to stabilize the lower lumbar spine using a ray cage fusion at both L4-5 and L5-S1. Plaintiff underwent the operation in September 1998. Although the surgery produced technically good results with the cages in good position, plaintiff did not obtain much pain relief. He developed additional problems with his cervical spine and right shoulder, which were unrelated to his back condition. Dr. Markworth treated him for those conditions, as well, and referred plaintiff to Dr. Boyd for shoulder surgery.
10. As a result of this injury, plaintiff was unable to work in any capacity from May 14, 1997, through the date of hearing on November 28, 2000. Dr. Markworth continued to treat him after the date of hearing with medications and other non-surgical treatment measures. During an office visit on July 6, 2001, plaintiff reported increased back pain to the point that he had to lie down during afternoons. Dr. Markworth ordered facet block injections, which provided plaintiff with short-term relief. Consequently, on August 21, 2001, the doctor recommended that he consider facet nerve ablations.
11. After the initial decision was filed in this case, defendants sent plaintiff to Dr. Melin, a neurosurgeon, for an independent medical examination. Dr. Melin examined him on June 11, 2001, and reviewed his medical records. The doctor concluded that plaintiff had post-laminectomy syndrome, a poorly understood condition that involved scar tissue formation. Dr. Melin found no evidence of segmental instability but recommended some additional tests to determine if the fusions were solid or if there were any other treatable abnormalities.
12. At the time the medical evidence was completed, plaintiff had not undergone the procedures recommended by either Dr. Markworth or Dr. Melin.
13. Plaintiff was not proven to have reached maximum medical improvement by the time Dr. Markworth saw him in August 2001. He had not been released to return to work by Dr. Markworth at any time up until the last office visit of record. Consequently, he remained unable to work in any capacity through August 21, 2001.
14. Plaintiff has been evaluated by doctors of different specialties who disagree as to the precise diagnosis he should have. Regardless of the diagnosis, he has developed a chronic pain problem as a result of his back injury. Considering the amount of scar tissue found by Dr. Markworth in the second operation, plaintiff's tendency to form scar tissue probably has played a role in his on-going symptoms. In any event, his condition is not well understood by medical science and there would likely be as many opinions as there are doctors involved.
15. Since plaintiff has not been found to have reached maximum medical improvement, no finding is made regarding the extent of any permanent partial disability he may sustain as a result of the injury giving rise to this claim.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an injury by accident arising out of and in the course of his employment with employer-defendant, as the result of a specific traumatic incident of the work assigned to him. N.C. Gen. Stat. § 97-2(6). Thus, plaintiff's injury is compensable and he is entitled to workers' compensation benefits. N.C. Gen. Stat. § 97-2 et seq.
2. As a result of a compensable injury, Plaintiff is entitled to compensation for temporary total disability at the rate of $512.00 per week from May 14, 1997, through August 21, 2001, and continuing thereafter for as long as he remains so disabled. N.C. Gen. Stat. §97-29. However, defendants are entitled to a credit for disability benefits paid during that period. N.C. Gen. Stat. § 97-42.
3. As a result of plaintiff's compensable injury, plaintiff is entitled to have defendants provide all medical compensation arising from this injury by accident. N.C. Gen. Stat. § 97-2(19); N.C. Gen. Stat. § 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay compensation to plaintiff for temporary total disability at the rate of $512.00 per week from May 14, 1997, through August 21, 2001, and continuing thereafter for as long as he remains so disabled, but subject to a credit for disability benefits paid during that period. This compensation has accrued and shall be paid in a lump sum subject to the attorney's fee hereinafter approved. Defendants shall pay interest on outstanding compensation from the date of the first hearing before the Deputy Commissioner until paid.
2. Defendants shall pay all medical expenses incurred by plaintiff as a result of this injury by accident, in accordance with N.C. Gen. Stat. § 97-25, as modified by N.C. Gen. Stat. § 97-25.1.
3. An attorney's fee in the amount of twenty-five percent of the net compensation awarded is approved for plaintiff's counsel. Defendants shall pay plaintiff's counsel a lump sum from the accrued compensation and shall thereafter pay every fourth check to plaintiff's counsel.
4. Defendants shall pay the costs.
This 17th day of September, 2002.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER